[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14330
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-61233-RAR


EDGEWATER HOUSE CONDOMINIUM ASSOCIATION,

Plaintiff-Appellant,

versus

CITY OF FORT LAUDERDALE, FLORIDA,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 31, 2020)

Before MARTIN, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

Edgewater House Condominium Association ("Edgewater") appeals the district court's grant of summary judgment to the City of Fort Lauderdale (the "City") on Edgewater's Fourteenth Amendment equal protection claim. The district court determined Edgewater was collaterally estopped from bringing its equal protection claim because it had previously litigated an identical issue against the City in Florida state court. On appeal, Edgewater argues that the district court's application of collateral estoppel was error. It also says that the district court wrongly denied its motions to stay the federal proceedings and to conduct discovery before summary judgment. Finally, Edgewater moves to supplement the record with an order from Florida's Fourth District Court of Appeal and regulatory materials from the City's website. After careful consideration, we deny the motion to supplement the record and affirm the district court's grant of summary judgment.

## I.

Edgewater is a nonprofit corporation that manages a parcel of real property in Fort Lauderdale. In February 2017, Edgewater applied to the City for approval of its site plan for a high-rise residential development. The City's Design Review Team and Development Review Committee ("DRC") approved Edgewater's application, finding that the site plan complied with the City's land development regulations and "Downtown Master Plan."

2

More than a year later, however, the City Commission (the "Commission") decided to independently review Edgewater's application. After a series of public hearings, the Commission voted to deny the application because it believed the development did not comply with the Downtown Master Plan. However, the Commission's written resolution denying Edgewater's application did not cite any specific ordinance, rule, statute, or other legal authority for the decision.

Unhappy with the denial of its application, Edgewater appealed the Commission's decision to the Broward County Circuit Court. It filed a petition for writ of certiorari ("Certiorari Action"), a complaint for writ of mandamus, and a complaint for a declaratory judgment. As relevant here, Edgewater argued in the Certiorari Action that: 1) the Commission violated Florida Statutes § 166.033(2) by failing to articulate a legal basis for denying Edgewater's application; and 2) the Commission denied Edgewater due process by rejecting its fully qualifying application without "competent, substantial evidence" supporting the decision. Edgewater's due process argument explained that the City is required to approve a site plan application that complies with all the applicable regulations. See Park of Commerce Assocs. v. City of Delray Beach, 606 So. 2d 633, 634 (Fla. 4th DCA 1992) (en banc) (holding that "a city cannot unreasonably withhold approval [of a site plan] once the legislatively adopted legal requirements have been met"); Effie, Inc. v. City of Ocala, 438 So. 2d 506, 509 (Fla. 5th DCA 1983) (holding that "once

3

the [zoning and permit] requirements are met, the governing body may not refuse the application"). Edgewater argued that its "development plan fully satisfies the Comprehensive Plan and the [development regulations'] requirements and intents," so the City could not deny its application.

The state court denied Edgewater's Certiorari Action on the merits on May 23, 2019. With respect to Edgewater's statutory claim, the court agreed with Edgewater that the City Commission did not comply with § 166.033(2), but it decided that the statute provided no remedy for this violation. Instead, the court instructed Edgewater to request "an amended written notice citing to the specific basis" for the Commission's decision. The court did not explicitly discuss Edgewater's due process claim but noted that it had "carefully considered the briefs, the record, and the applicable law" in denying Edgewater's Certiorari Action on the merits.

On May 15, 2019, Edgewater filed suit against the City in the Southern District of Florida. As relevant here, Edgewater asserted that the City violated its right to equal protection under the Fourteenth Amendment by denying its application but approving similar applications, without any rational basis for treating Edgewater differently.

In a motion to dismiss, the City asserted a defense of collateral estoppel against Edgewater's equal protection claim. It argued that the state court, by

4

denying Edgewater's Certiorari Action on the merits, determined that the Commission's decision to deny Edgewater's application was supported by substantial evidence.

Edgewater opposed the City's motion. Because the City's motion relied on materials outside the pleadings, the district court converted the City's motion to dismiss to a summary judgment motion and notified the parties they could submit additional materials on the motions.

In response, Edgewater moved to defer consideration of the City's summary judgment motion until Edgewater could conduct discovery on the underlying facts. In the meantime, Edgewater appealed the Circuit Court's ruling through a second-tier certiorari petition to the Fourth District Court of Appeal. Edgewater also filed another petition for certiorari and writ of mandamus in the Broward County Circuit Court, seeking to compel the City to provide the legal basis for denying Edgewater's application. In light of these developments, Edgewater then moved the district court to stay the federal case until all state court proceedings were finished.

The court denied Edgewater's motion to defer summary judgment and granted summary judgment to the City. The district court held that Edgewater was collaterally estopped from bringing an equal protection claim. The court then

denied as moot Edgewater's motion to stay the federal case.  Edgewater timely appealed.

## II.

We review de novo a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the party opposing summary judgment.  See Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).  We review de novo a district court's application of collateral estoppel. Richardson v. Miller, 101 F.3d 665, 667–68 (11th Cir. 1996).  When examining an application of collateral estoppel, we review "the legal conclusion that an issue was actually litigated in a prior action under the clearly erroneous standard."  Id. at 667–68.

A district court's decision on a motion to defer summary judgment in order to conduct discovery is reviewed for abuse of discretion.  Burks v. Am. Cast Iron Pipe Co., 212 F.3d 1333, 1336 (11th Cir. 2000) (per curiam).  We also review for an abuse of discretion the district court's denial of a motion to stay litigation pending the outcome of a related proceeding.  CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1288 (11th Cir. 1982).

## III.

### A.

The district court did not err in granting summary judgment to the City. Because the Broward County Circuit Court previously held that the Commission had competent and substantial evidence to deny Edgewater's application, the district court properly held that Edgewater was collaterally estopped from bringing its equal protection claim.

The doctrine of collateral estoppel precludes the relitigation of issues actually litigated and decided in a prior action, "whether or not the second suit is based on the same cause of action." Johnson v. United States, 576 F.2d 606, 611 (5th Cir. 1978).[1] If the prior judgment was in state court, "then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." In re St. Laurent, 991 F.2d 672, 675–76 (11th Cir. 1993), as corrected on reh'g (June 22, 1993).

Edgewater and the City agree that the prior judgment at issue here was in Florida state court. We therefore apply Florida law in determining the preclusive effect of the state court order. Under Florida law, collateral estoppel applies when "(1) an identical issue, (2) has been fully litigated, (3) by the same parties or their

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court held that decisions of the former Fifth Circuit handed down before close of business on September 30, 1981, are binding in the Eleventh Circuit. Id. at 1209.

privies, and (4) a final decision has been rendered by a court of competent jurisdiction." Wingard v. Emerald Venture Fla. LLC, 438 F.3d 1288, 1293 (11th Cir. 2006). Edgewater does not contest that the state court Certiorari Action involved the same parties as its federal action or that the state court's decision was a "final decision." Edgewater argues only that an identical issue was not fully litigated in the Certiorari Action.

We agree with the district court that Edgewater is collaterally estopped from asserting its equal protection claim. We first address whether the Certiorari Action and the federal action share an identical issue, then whether this issue was fully litigated.

1. Identical Issue

Edgewater's Certiorari Action in state court and its federal equal protection suit share an identical issue: whether Edgewater's application complied with all applicable regulations and thus the Commission was required to approve it. In the Certiorari Action, Edgewater alleged the Commission violated its right to due process by rejecting its application without "competent, substantial evidence" to do so. The state court denied this due process claim on the merits, albeit without discussion. In the district court, Edgewater alleged the Commission had violated its right to equal protection by denying Edgewater's fully qualifying application

8

and approving other fully qualifying applications without a rational basis for treating them differently.

In both actions, Edgewater argued that its application complied with the City's regulations, and for that reason the Commission had no evidentiary basis to deny its application. But, by summarily denying Edgewater's Certiorari Action on the merits, the state court necessarily determined that the Commission had competent, substantial evidence that Edgewater's application did not comply with the regulations and thus should be denied.[2] A federal court holding that the Commission had no rational basis for denying Edgewater's application would necessarily contradict the state court's earlier determination that the Commission had sufficient basis to deny the application.

---

[2] We recognize that "in general a federal court will not confer preclusive effect on a state court order where it is unclear what the state court actually decided." New Port Largo, Inc. v. Monroe County, 95 F.3d 1084, 1090 n.6 (11th Cir. 1996) (applying Florida collateral estoppel law). But it is also true that assessing "what has been decided . . . [in a] case comprehends things [d]ecided by necessary implication as well as those decided explicitly." Morrow v. Dillard, 580 F.2d 1284, 1290 (5th Cir. 1978); see also PaineWebber v. Farnam, 870 F.2d 1286, 1291 (7th Cir. 1989) (holding that, for collateral estoppel, "[a]n issue may be 'actually decided' even without an express ruling if a court can determine that the issue in question was decided by necessary implication").

Although the Circuit Court did not explicitly discuss Edgewater's due process claim in its denial of the Certiorari Action, it is clear that the Circuit Court denied the due process claim by necessary implication. The Circuit Court stated that it was denying Edgewater's entire Certiorari Action "on the merits." Although Edgewater's due process claim provided an independent basis for granting the Certiorari Action, the Circuit Court did not grant any part of the Certiorari Action. Cf. New Port Largo, 95 F.3d at 1090 n.6 (expressing doubt that the state court actually decided an issue because another holding in the case "caused factual findings on [the issue] to be unimportant").

9

Edgewater argues that the state court judgment actually supports allowing its equal protection claim to proceed. It points out that the state court held the City violated Florida law by not citing a specific legal basis for denying Edgewater's application. Because the court held that the City violated the law, Edgewater says, the state court judgment had the "practical effect" of siding with Edgewater. This argument, however, conflates Edgewater's § 166.033(2) claim with Edgewater's due process claim. Although the state court observed that the City Commission violated § 166.033(2) by failing to articulate a legal reason for denying Edgewater's application, the state court separately denied Edgewater's due process claim. And by denying the due process claim, the state court necessarily determined that Edgewater's application was rejected with a proper factual basis. This holding was entirely compatible with the state court's separate holding that the City should have articulated the legal basis for denying Edgewater's application.

Edgewater also argues that it has never litigated whether its application was treated differently from similarly situated projects. It argues that its application was "legally indistinguishable" from at least four approved developments, so its application should have also been approved. Although it is entirely possible that different theories of the alleged equal protection violation could proceed without relitigating the Circuit Court's findings, Edgewater's theory of equal protection

10

contradicts the Circuit Court's due process holding.  Specifically, Edgewater's equal protection claim compares Edgewater's application to applications that satisfied the City's regulations.  Importantly, Edgewater does not compare its application to those that did not satisfy the regulations but were nevertheless approved.  Thus, to succeed on its equal protection claim, Edgewater would need to relitigate the state court's conclusion that Edgewater's application did not comply with the regulations and the Commission had sufficient evidence to reject its application.  Collateral estoppel prevents it from doing so.

## 2.  Fully and Fairly Litigated

The district court found that, through the Certiorari Action, Edgewater and the City had a full and fair opportunity to litigate whether the Commission had sufficient basis to deny Edgewater's application.  See Paresky v. Miami-Dade Cnty. Bd. of Cnty. Comm'rs, 893 So. 2d 664, 666 (Fla. 3d DCA 2005) (per curiam) (holding that "certiorari review in the [Florida] circuit court" provided a full and fair opportunity to litigate and collateral estoppel applied).  Edgewater argues now that collateral estoppel should not apply because its "equal protection claim has never been litigated."  But collateral estoppel applies whenever two actions share a legal issue.  Johnson, 576 F.2d at 611.  A shared cause of action is not required.  See id.  On this record, we affirm the district court's holding that collateral estoppel applies.  Edgewater was able to fully and fairly litigate the issue

11

of whether its application should have been approved because it met the regulatory requirements.

## B.

Next, Edgewater argues that the district court should have permitted discovery before granting summary judgment to the City. Edgewater filed a motion to delay summary judgment pending discovery, but the district court denied this motion. The court did not abuse its discretion in doing so.

Rule 56 of the Federal Rules of Civil Procedure contemplates that "a court may grant summary judgment without the parties having conducted discovery." See Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 844 (11th Cir. 1989) (per curiam). If a summary judgment motion is filed before discovery, the party "opposing summary judgment may move the court [under Rule 56(d)] to permit the discovery necessary to oppose the motion." Id. at 843. A Rule 56(d) movant must "specifically demonstrate how postponing the court's ruling would have enabled him, by discovery or other means, to rebut [the opposing party's] showing of the absence of a genuine issue of fact." Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1063 (11th Cir. 2015) (quotation marks omitted).

Edgewater's Rule 56(d) motion did not specifically demonstrate how discovery would allow it to rebut the City's collateral estoppel defense. Instead, Edgewater's request for discovery focused on the merits of its equal protection

claim.  For this reason, the district court properly exercised its discretion to deny

Edgewater's motion.

C.

Finally, Edgewater argues that the district court should have granted its

motion to stay the federal case until the proceedings in state court were finished.

We conclude that the district court did not abuse its discretion by denying the

motion to stay.

A district court has "inherent discretionary authority . . . to stay litigation

pending the outcome of [a] related proceeding in another forum."  CTI-Container,

685 F.2d at 1288.  "A variety of circumstances may justify a district court stay

pending the resolution of a related case in another court," including case

management or principles of abstention.  Ortega Trujillo v. Conover & Co.

Commc'ns, Inc., 221 F.3d 1262, 1264 (11th Cir. 2000) (per curiam).

Edgewater says the district court should have held the federal case until

Florida state courts had ruled on Edgewater's second-tier certiorari petition and its

second certiorari and mandamus action.  It asserts that staying the federal

proceedings was necessary because if Edgewater had won in either state

proceeding, that victory would have supported its federal equal protection claim.

We reject this argument.  First, under Florida law, Edgewater's second-tier

certiorari petition to the Fourth District Court of Appeal could not change the

13

Circuit Court's determination that the Commission had competent, substantial evidence to deny Edgewater's application. On second-tier certiorari review, "[t]he [appellate court] may not review the record to determine whether the underlying agency decision is supported by competent, substantial evidence." Miami-Dade County v. OmniPoint Holdings, Inc., 863 So. 2d 195, 199 (Fla. 2003). For this reason, the outcome of the second-tier certiorari petition could not have affected the disposition of Edgewater's federal action on collateral estoppel grounds.

Likewise, Edgewater's second certiorari and mandamus action in the Circuit Court had no implications for Edgewater's federal action. The second certiorari and mandamus action asked the Circuit Court to compel the City to issue a written notice describing the specific legal basis for denying Edgewater's application. Edgewater's second certiorari and mandamus action sought to enforce the Circuit Court's previous determination that the City failed to comply with Florida Statutes § 166.033(2). But the second action did not concern the Circuit Court's other holding that the City Commission had substantial evidence to deny Edgewater's application. Thus, the outcome of this action would not have affected Edgewater's federal case, either.

For these reasons, the district court did not abuse its discretion by denying Edgewater's motion to stay the federal proceedings.

14

D.

On appeal, Edgewater seeks to supplement the record with two documents. We deny its motion to supplement the record because the additional materials are not dispositive of Edgewater's appeal.

"Generally, a reviewing court will not consult the evidence or record of another case if it was not first considered in the district court." Young v. City of Augusta ex rel. DeVaney, 59 F.3d 1160, 1168 (11th Cir. 1995). "[W]e review such requests on a case-by-case basis," considering factors like "whether the additional material would be dispositive of pending issues in the case and whether interests of justice and judicial economy would thereby be served." Id.

Considering those factors here, we deny Edgewater's motion because the additional materials are not dispositive of this appeal. The first document Edgewater seeks to add to the record is an order from Florida's Fourth District Court of Appeal. The order directs the City to show cause why Edgewater's second-tier certiorari petition should not be granted. As discussed, however, the second-tier certiorari petition is irrelevant to the application of collateral estoppel in this case.

The second document Edgewater seeks to add to the record is a collection of proposed amendments to the City's development regulations. Edgewater argues that the proposed amendments show that the City did not have sufficient basis to

15

deny its application.  But, as we have discussed, the doctrine of collateral estoppel prevents them from relitigating this issue.

In sum, neither document is dispositive of this appeal.  Edgewater's additional materials do not undermine the judgment entered by the Broward County Circuit Court which estops Edgewater from relitigating the Commission's basis for denying its application.  We therefore deny Edgewater's motion to supplement the record.

## IV.

The district court correctly granted summary judgment to the City because Edgewater was collaterally estopped from litigating its equal protection claim.  The district court did not abuse its discretion in denying Edgewater's motion to stay and its motion to delay summary judgment.

For these reasons, Edgewater's motion to supplement the record is **DENIED** and the district court's judgment is **AFFIRMED.**

16